UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------x

| | | |
|---|---|---|
| McIntyre and Doreen BLONDEL, et al., | : | Case No. 13-cv-05614- |
| | : | CCC-MAH |
| Plaintiffs, | : | |
| | : | |
| - against - | : | |
| | : | |
| AMERICAN MORTGAGE NETWORK, | : | |
| INC., et al., | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------x

MEMORANDUM OF LAW OF DEFENDANTS BANK OF
AMERICA, N.A. AND COUNTRYWIDE HOME LOANS, INC.
IN SUPPORT OF THEIR MOTION TO DROP PLAINTIFFS
AND TO DISMISS PLAINTIFFS' COMPLAINT

**BRYAN CAVE LLP**
Scott H. Kaiser, Esq.
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
scott.kaiser@bryancave.com

*Attorneys for Bank of America, N.A. and
Countrywide Home Loans, Inc.*

**REED SMITH LLP**
Mark Melodia, Esq.
Diane Bettino, Esq.
136 Main Street, Suite 250
Princeton Forrestal Village
Princeton, NJ 08540
Main: 609-987-0050
Fax: 609-951-0824
MMelodia@reedsmith.com
DBettino@reedsmith.com

*Attorneys for Bank of America, N.A. and
Countrywide Home Loans, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................III

PRELIMINARY STATEMENT ........................................................................1

SUMMARY OF THE ALLEGATIONS ................................................5

ARGUMENT ..................................................................................7

I.  COLLATERAL ESTOPPEL BARS CYNTHIA ROBERTS FROM BRINGING THIS ACTION...............................................................7

II.  PLAINTIFFS' CLAIMS ARE MISJOINED UNDER FEDERAL RULE OF CIVIL PROCEDURE 20 ....................................................8

III.  PLAINTIFFS FAIL TO STATE ANY CLAIMS FOR RELIEF .................12

    A.  Standard For Motion To Dismiss......................................12

    B.  The Complaint Does Not Comply With Rule 8(a)(2) And The Pleading Requirements Set Forth In *Twombly* And *Iqbal* .................14

    C.  Plaintiffs' TCCWNA Claim Fails As A Matter Of Law ...................16

    D.  Plaintiffs' Misrepresentation Claims Fail As A Matter Of Law.........17

        1.  Plaintiffs' Fraud Claims Do Not Satisfy Rule 9(b) .................17

        2.  Plaintiffs' Fraud Claims Do Not Allege Causation .................20

        3.  The Negligent Misrepresentation Claim Fails For Lack of A Special Relationship Between Defendants and Plaintiffs .................25

    E.  Plaintiffs' Negligence Claim Fails As A Matter Of Law...................26

    F.  Plaintiffs' Slander Of Title Claim Fails As A Matter Of Law...........27

    G.  Plaintiffs' Ejectment Claim Fails As A Matter Of Law.....................29

    H.  Plaintiffs' Breach Of Contract/ Constructive  Fraud Claim Fails As A Matter Of Law...............................................................30

        1.  Breach of Contract .................................................30

        2.  Constructive Fraud.................................................33

1757730.1

    I.     Plaintiffs' Civil Conspiracy Claim Fails As A Matter Of Law .......... 34

    J.     Plaintiffs' Unjust Enrichment Claim Fails As A Matter of Law ........ 37

IV.     PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO REPLEAD ........... 38

CONCLUSION ..................................................................................................... 40

1757730.1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aaberg v. ACandS Inc.*,
  152 F.R.D. 498 (D. Md. 1994) ...........................................................9

*Abeel v. Bank of Am., N.A.*,
  Case No. 12-cv-4269 (E.D.N.Y. Nov. 9, 2012) ........................... 10, 11

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
  No. 12-cv-4686 (WFK) (JMA), --- F. Supp. ---, 2013 WL 2285205
  (E.D.N.Y. May 23, 2013) .............................................................. passim

*Acevedo v. Allsup's Convenience Stores, Inc.*,
  600 F.3d 516 (5th Cir. 2010) ............................................................9

*Adams v. Teamsters Local 115*,
  214 Fed. App'x 167 (3d Cir. 2007) ....................................................14

*Adams v. U.S. Bank, NA*,
  Case No. 12-cv-04640, 2013 WL 5437060 (E.D.N.Y. Sept. 27, 2013) ....... 10, 11

*Allen v. LaSalle Bank, N.A.*,
  No. Civ. 08-2240, 2012 WL 1898612 (D.N.J. May 23, 2012) ..........................16

*Arbitron Inc. v. Longport Media LLC*,
  No. CIV.A. 12-2444, 2013 WL 1163492 (D.N.J. Mar. 19, 2013)................ 30-31

*Arista Records, Inc. v. Flea World, Inc.*,
  356 F. Supp. 2d 411 (D.N.J. 2005)................................................ 28-29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................. passim

*Bailey v. Deutsche Bank Trust Co.*,
  Civil Action No. DKC 13–0144, 2013 WL 2903498 (D. Md. Jun. 12,
  2013)..............................................................................................26

*Bank of Am. Corp. v. Superior Court*,
  198 Cal. App. 4th 862 (Cal. Ct. App. 2011) ................................. 22-23

*Barber v. America's Wholesale Lender*,
  289 F.R.D. 364 (M.D. Fla. 2013) ................................................ 11-12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................. passim

iii

*Brookhart v. Rohr*,
  385 Fed. App'x 67 (3d Cir. 2010) ....................................................................14

*Cargill Home Trading v. Applied Dev. Co.*,
  706 F. Supp. 2d 563 (D.N.J. 2010)..................................................................30

*Cervantes v. Countrywide Home Loans, Inc.*,
  No. CV 09-517-PHX-JAT (Lead), 2009 U.S. Dist. LEXIS 87997 (D.
  Ariz. Sept. 24, 2009),
  *aff'd*, 656 F.3d 1034 (9th Cir. 2011) ...............................................................36

*Chazanow v. Sussex Bank*,
  No. CIV.A. 11-1094 CCC, 2012 WL 870327 (D.N.J. Mar. 13, 2012)...............33

*Ciccone v. World Sav. Bank, F.S.B.*,
   No. 3:12-CV-01661-PGS-TJB, 2013 WL 2146912 (D.N.J. May 15,
  2013) .............................................................................................................34

*City of Cleveland v Ameriquest Mortg. Secs., Inc.*,
  621 F. Supp. 2d 513 (N.D. Ohio 2009),
  *aff'd*, 615 F.3d 496 (6th Cir. 2010) ...................................................... 22, 23, 24

*Crete v. Resort Condos. Int'l, LLC*,
  Civ.A. No. 09-5665, 2011 WL 666039 (D.N.J. Feb. 14, 2011)............... 16-17, 38

*Donachy v. Intrawest U.S. Holdings, Inc.*,
  No. 10-cv-4038, 2012 WL 869007 (D.N.J. Mar. 14, 2012)................................18

*Dovale v. Marketsource, Inc.*,
  No. Civ.A. 05-2872 (FLW), 2006 WL 2385099 (D.N.J. Aug. 17, 2006)...........38

*E*Trade Fin. Corp. v. Deutsche Bank AG*,
  631 F. Supp. 2d 313 (S.D.N.Y. 2009),
  *aff'd*, 374 Fed. App'x 119 (2d Cir. 2010) .........................................................33

*Evancho v. Fisher*,
  423 F.3d 347 (3d Cir. 2005) ............................................................................13

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*,
  82 F.3d 69 (3d Cir. 1996) ................................................................................20

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ..............................................................................9

*Frega v. N. N.J. Mortg. Ass'n*,
  51 N.J. Super. 331, 143 A.2d 885 (App. Div. 1958)................................... 27, 28

*Galayda v. Wachovia Mortg., FSB*,
  No. CIV. A. 10-1065 FLW, 2010 WL 5392743 (D.N.J. Dec. 22, 2010)............26

iv

*GlassHouse Sys., Inc. v. Int'l Bus. Machs. Corp.*,
607 F. Supp. 2d 709 (E.D. Pa. 2009) ................................................................ 25

*Gray v. Bayer Corp.*,
No Civ. A. 08-4716 (JLL), 2009 WL 1617930 (D.N.J. June 9, 2009) ............... 17

*Griffith-Fenton v. Chase Home Fin.*,
11 CV 4877 (VB), 2012 U.S. Dist. LEXIS 99450 (S.D.N.Y. May 28, 2012)
*aff'd*, No. Civ. 12-3357, 2013 U.S. App. LEXIS 17556 (2d Cir. Aug. 22, 2013) ............................................................................................................... 32

*Hale v. Stryker Orthopedics*,
No. Civ. 8-337 (WJM), 2009 WL 321579 (D.N.J. Feb. 9, 2009) ...................... 18

*Hawkins v. Harris*,
141 N.J. 207 (1995) ........................................................................................... 28

*Hemy v. Perdue Farms, Inc.*,
No. Civ. A. 11-888, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) ....................... 17

*Henderson v. Volvo Cars of N. Am., LLC*,
No. Civ. 09-4146 (DMC), 2010 WL 2925913 (D.N.J. Jul. 21, 2010) ............... 19

*Henglein v. Colt Indus. Operating Corp.*,
260 F.3d 201 (3d Cir. 2009) ................................................................................ 8

*Holmes v. Sec. Investor Prot. Corp.*,
503 U.S. 258 (1992) .................................................................................... 21, 24

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ............................................................................ 13

*In re Mortg. Elec. Registration Sys. Litig.*,
744 F. Supp. 2d 1018 (D. Ariz. 2010) ............................................................... 36

*In re: Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) .............................................................................. 17

*Ivins v. Town Tavern*,
335 N.J. Super. 188, 762 A.2d 232 (App. Div. 2000) ....................................... 26

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA*,
458 F.3d 244 (3d Cir. 2006) ................................................................................ 8

*Kalie v. Bank of Am. Corp*,
No. 12 Civ. 9192 PAE, -- F.R.D. --, 2013 WL 4044951 (S.D.N.Y. Aug. 9, 2013) .................................................................................... 9, 10, 11, 12

v

*Kulas v. Pub. Serv. Elec. & Gas Co.*,
   41 N.J. 311 (1964) ...........................................................................20

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999) ...........................................................21

*Larobina v. Wells Fargo Bank, N.A.*,
   No. 3:10cv1279 (MRK), 2012 WL 1032953 (D. Conn. Mar. 27, 2012) ............23

*Lone v. Brown*,
   199 N.J. Super. 420, 489 A.2d 1192 (App. Div. 1985)......................................27

*Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*,
   652 F. Supp. 2d 576 (E.D. Pa. 2009) ...................................................23

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011)........................................................ 13, 18

*McCabe v. Ernst & Young, LLP*,
   No. Civ. 01-5747, 2006 WL 42371 (D.N.J. Jan. 6, 2006)
   *aff'd*, 494 F.3d 418 (3d Cir. 2007) .....................................................20

*MDNet, Inc. v. Pharmacia Corp.*,
   147 F. App'x 239 (3d Cir. 2005)..........................................................18

*Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n*,
   37 N.J. 507 (1962) ...........................................................................35

*Mu Sigma, Inc. v. Affine, Inc.*,
   No. Civ.A. 12-1323 FLW, 2013 WL 3772724 (D.N.J. July 17, 2013) ..............35

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
   79 F. Supp. 2d 494 (D.N.J. 2000).................................................... 18, 34

*Patetta v. Wells Fargo Bank, NA*,
   No. CIV. 3:09-2848 (FLW), 2009 WL 2905450 (D.N.J. Sept. 10, 2009)..........26

*Peters Well Drilling Co. v. Hanzula*,
   242 N.J. Super. 16, 575 A.2d 1375 (App. Div. 1990).......................................27

*Pitman v. Ottenberg*,
   No. 10-2538, 2011 WL 6935274 (D.N.J. Dec. 30, 2011) ....................................15

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989) .........................................................................20

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*,
   317 F. Supp. 2d 301 (S.D.N.Y. 2003)...................................................... 14-15

1757730.1

*Reckitt Benckiser Inc. v. Tris Pharma, Inc.*,
   No. CIV.A. 09-3125 FLW, 2011 WL 4916337 (D.N.J. Oct. 17, 2011) .............31

*Richards v. Deutsche Bank Nat'l Trust Co.*,
   CV 12-4786 DSF (RZx), 2012 U.S. Dist. LEXIS 115302 (C.D. Cal. Aug.
   15, 2012)...............................................................................................................12

*Rivera v. Bank of Am. Home Loans*,
   No. 09 CV 2450 (LB), 2011 WL 1533474 (E.D.N.Y. Apr. 21, 2011) ...............33

*Rivera v. Wash. Mut. Bank*,
   637 F. Supp. 2d 256 (D.N.J. 2009)....................................................................16

*Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*,
   415 Fed. App'x 432 (3d Cir. 2011) ....................................................................28

*Roll v. Singh*,
   No. 07-CV-04136FLW, 2008 WL 3413863 (D.N.J. June 26, 2008)...................26

*Sbeih v. Township of E. Brunswick*,
   No. 3:12–CV–05893–PGS–TJB, 2013 WL 1224463 (D.N.J. Mar. 25,
   2013)....................................................................................................................13

*Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In
   re TOUSA, Inc.)*,
   680 F.3d 1298 (11th Cir. 2012)..........................................................................22

*Shackil v. Lederle Labs., a Div. of Am. Cyanamid Co.*,
   116 N.J. 155 (1989) ............................................................................................35

*Sinclair v. Citi Mortgage, Inc.*,
   519 Fed. Appx. 737 (3d Cir. 2013) .....................................................................32

*Skypala v. Mortg. Elec. Registration Sys., Inc.*,
   655 F. Supp. 2d 451 (D.N.J. 2009).....................................................................16

*Smith v. Trusted Universal Standards In Elec. Transactions, Inc.*,
   CIV09-4567RBKKMW, 2010 WL 1799456 (D.N.J. May 4, 2010) ..................30

*Tare v. Bank of Am.*,
   No. Civ.A. 07-583 (JLL), 2009 WL 799236 (D.N.J. Mar. 24, 2009)................35

*Thomas v. U.S. Bank Nat'l Ass'n*,
   474 B.R. 450 (D.N.J. 2012)................................................................................32

*Trevino v. Merscorp, Inc.*,
   583 F. Supp. 2d 521 (D. Del. 2008) ...................................................................37

1757730.1

*Tutanji v. Bank of Am.*,
No. Civ.A. 12-887 (JLL), 2012 WL 1964507 (D.N.J. May 31, 2012) ...............34

*U.S. ex rel. Lampkin v. Johnson & Johnson, Inc*.,
No. Civ.A. 08-05362 JAP, 2013 WL 2404238 (D.N.J. May 31, 2013)..............36

*United Jersey Bank v. Kensey*,
704 A.2d 38 (App. Div. 1997)..................................................................................26

*Weske v. Samsung Elecs. Am. Inc.*,
No. Civ. 2:10-4811 (WJM), 2013 WL 1163501 (D.N.J. Aug. 23, 2003)............18

## <u>Statutes</u>

42 U.S.C. § 1981a ...................................................................................................21

N.J. Stat. §  2A:14-1 ..............................................................................................39

N.J. Stat. § 2A:14-2(a) ...........................................................................................39

N.J.S.A. § 56:12-15................................................................................................16

## <u>Other Authorities</u>

Restatement of Torts, § 629, Comment (d), p. 340 ................................................27

## <u>Rules</u>

Fed. R. Civ. P. 12(b)(6)..........................................................................................13

Fed. R. Civ. P. 20 ........................................................................................... passim

Fed. R. Civ. P. 21 .....................................................................................................9

Fed. R. Civ. P. 8(a)(2)...................................................................................... passim

Fed. R. Civ. P. 9(b) ......................................................................................... passim

Fed. R. Civ. P. 9(g) ................................................................................................28

1757730.1

Defendants Bank of America, N.A. and Countrywide Home Loans, Inc., (collectively, "Defendants") respectfully submit this Memorandum of Law in support of their motion to: (1) drop misjoined Plaintiffs without prejudice, and dismiss all claims of McIntyre and Doreen Blondel, with prejudice, or alternatively, (2) dismiss the Complaint as to all Plaintiffs with prejudice, pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), 9(g), 12(b)(6), 20(a) and 21.

## PRELIMINARY STATEMENT

This lawsuit is one of five substantively identical lawsuits filed by Plaintiffs' counsel in the Superior Court of New Jersey that were removed to this Court by Bank of America, N.A. on September 20, 2013.[1]  The case is one of at least 100 copycat mortgage mass actions filed in the United States over the last five years. Almost all of these lawsuits have been abandoned or dismissed at the pleadings stage.  Notably, Plaintiffs' counsel previously brought a nearly identical action that was removed to the Eastern District of New York.  Defendants' motion to sever and dismiss in that action was granted earlier this year.  *See Abraham v. Am. Home Mortg. Servicing, Inc.*, No. 12-cv-4686 (WFK) (JMA), --- F. Supp. ---, 2013 WL 2285205 (E.D.N.Y. May 23, 2013).  One of the 98 Plaintiffs in this case, Cynthia

---

[1] *See Apostolakos. v. Accredited Home Lenders, Inc.*, No. 3:13-cv-05619-MAS-LHG; *Brecker v. 1st Republic Mortgage Bankers, Inc.*, No. 1:13-cv-05646-JHR-JS; *Haley v. AMS Servicing, LLC*, No. 2:13-cv-05645-FSH-JBC; *Peralta v. ABN AMRO Mortgage Group, Inc.*, No. 2:13-cv-05607-ES-JAD.

Roberts, was also a plaintiffs in *Abraham*.  Consequently, she is barred by collateral estoppel from participating as a plaintiff in this multiple plaintiff action because she has already litigated – and lost – the issue of whether her claims may be brought collectively with other borrowers.

In this case, 98 Plaintiffs who obtained residential loans in unrelated transactions over a nine-year period from 2001 through 2009 bring this lawsuit against 38 different mortgage banks, lenders and servicers.  The Complaint is replete with sweeping generalizations and bald accusations.  But stripped of its rhetoric, its legal insufficiency is clear for a number of reasons.

The Complaint fails to allege the essential precondition of a mass joinder action: an injury that arises out of the "same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(1)(A).  The Complaint does not contain any allegations suggesting that Plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions or occurrences.  To the contrary, the Complaint makes it clear that Plaintiffs' claims arise from many different individual loan transactions over a nine-year period involving different lenders, different branch offices, different loan officers, and different loan products for different properties in different locales under different economic conditions.

While lacking any coherent or common occurrence or transaction or supporting factual details, Plaintiffs broadly allege a consistently rejected theory

that mortgage banks conspired to cause the national decline of the housing market through the use of inflated appraisals, lax underwriting standards and Mortgage Electronic Registration Systems, Inc. ("MERS") and the MERS® System, an electronic system that tracks the beneficial interests or servicing rights in promissory notes for MERS® System members.   Notably, Plaintiffs do not allege any facts to support their claim that 38 financial institutions, many in competition to obtain business, coordinated and executed an elaborate conspiracy to defraud customers.  Plaintiffs do not identify any specific loans that Defendants allegedly extended because of inflated appraisals or lax underwriting standards.  Plaintiffs fail to allege any facts reflecting how Defendants' use of the MERS® System harmed borrowers or investors; indeed, courts across the country have consistently approved the use of the MERS® System.

The 98 Plaintiffs are misjoined under Fed. R. Civ. P. 20(a)(1).   In addition, Plaintiffs' nine claims each fail as a matter of law.

- The Complaint does not meet the pleading standards mandated by Fed. R. Civ. P. 8(a)(2), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

- Plaintiffs' claim for violation of the New Jersey Truth in Consumer Contract, Warranty, And Notice Act (N.J.S.A. § 56:12-14) (the "TCCWNA") fails because Plaintiffs have not alleged a violation of a

3

clearly established right and have not alleged a consumer contract within the meaning of the statute.

- Plaintiffs' intentional and negligent misrepresentation claims do not comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) and lack the necessary elements of causation.  Further, Plaintiffs' negligent misrepresentation claim fails because there is no special relationship between Defendants and Plaintiffs.

- Plaintiffs' negligence claim fails because Defendants do not owe Plaintiffs a duty of care.

- Plaintiffs' claims for slander of title, ejectment for wrongful possession of claim on land, civil conspiracy/member liability in joint enterprise, and unjust enrichment fail because they are pleaded in an entirely conclusory manner.  Moreover, if Plaintiffs are claiming that the use of the MERS® System somehow constitutes wrongful conduct, that claim fails because numerous courts have concluded that the use of the MERS® System is entirely proper.  In addition, an unjust enrichment claim cannot lie to the extent that Plaintiffs' claims are predicated on their mortgage contracts.

- Plaintiffs' claim for breach of contract/constructive fraud fails because Plaintiffs do not (and cannot) allege the provisions of any contracts that were breached, and Plaintiffs are not third-party beneficiaries of the

4

alleged contracts between the U.S. Government and Defendants.

For these reasons, it is respectfully submitted that because the Plaintiffs are misjoined, the Court should drop all Plaintiffs except the Blondels. The Blondels' claims (and, if the Court should find proper joinder, all Plaintiffs' claims) should be dismissed with prejudice for failure to state a claim as a matter of law.

## SUMMARY OF THE ALLEGATIONS

This lawsuit is brought by 98 Plaintiffs from 25 states against 38 Defendants.  (Comp. ¶¶ 6-138.)  (The Complaint ("Comp.") is attached as Exhibit 1 to the Certification of Scott H. Kaiser ("Kaiser Cert.").)  Although Plaintiffs attempt to identify the Defendants with whom they have an alleged relationship (*id*.), all Plaintiffs bring all claims against all Defendants collectively.   (Comp. ¶¶ 212-255.)  Plaintiffs do not allege when they obtained their loans (other than providing a nine-year range from 2001 through 2009).  (Comp. ¶ 2(a).)

The premise of the Complaint is that Defendants "participated in a common plan and scheme involving the origination of loans, servicing of loans and/or acquisition of loans" and "ratified and approved" of the actions taken by each other.  (Comp. ¶¶ 141, 192.)  Plaintiffs do not allege how 38 financial institutions could coordinate such an elaborate scheme, or how Defendants – who are competitors – ratified and approved each other's actions.

Plaintiffs allege that, as part of the scheme, Defendants originated loans

1757730.1

using inflated appraisals and lax underwriting standards and then sold these loans to investors.  (Comp. ¶¶ 141, 169, 186-187.)  Plaintiffs further allege that Defendants somehow "log[ged] all of their mortgage transfers in a private electronic registry, instead of publicly recording the transfer[s] in the local county clerk's office[s]," allegedly enabling Defendants to "avoid local recordation statutes and real estate trade custom," and "transfer, bundle, package and sell mortgages to investors without regard to the valuation of the properties or the lending standards utilized by Defendants."  (Comp. ¶¶ 144, 171-172.)

Plaintiffs do not identify a single inflated appraisal.  Plaintiffs do not identify a single loan that was originated in violation of any Defendant's underwriting guidelines or how those guidelines were lax.  Plaintiffs do not identify a single promissory note that was tracked on the MERS® System, or explain how the use of the MERS® System harmed borrowers or affected the obligations owed under Plaintiffs' mortgage contracts.

Plaintiffs also vaguely complain about loan modification efforts of unspecified Plaintiffs and false filings involving ownership of unspecified Plaintiffs' mortgages.  (Comp. ¶¶ 189, 199-202, 238.)  Plaintiffs also allege that Defendants allegedly failed to "properly utilize" funds that they received through the Troubled Asset Relief Program ("TARP"), although Plaintiffs do not allege which Defendants actually participated in TARP and whether TARP participants

6

repaid the money loaned by the government.  (Comp. ¶¶ 194-198.)

On these bases, Plaintiffs assert nine claims against all defendants for: (1) violation of the TCCWNA; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) negligence; (5) slander of title; (6) ejectment for wrongful possession of claim on land; (7) breach of contract/constructive fraud; (8) civil conspiracy/member liability in joint enterprise; and (9) unjust enrichment.

## ARGUMENT

### I.   COLLATERAL ESTOPPEL BARS CYNTHIA ROBERTS FROM BRINGING THIS ACTION

Cynthia Roberts' claims should be dismissed because collateral estoppel precludes her from bringing her claims with other borrowers in a single action. Roberts attempted to try her claims with other borrowers in *Abraham*.[2]  As discussed in greater detail in Point II, the *Abraham* Court held that plaintiffs' claims were "misjoined under Rule 20" because their "separate mortgage transactions do not constitute a single transaction or occurrence."  *Abraham*, 2013 WL 2285205, at *4.  The *Abraham* court granted the defendants' motion to sever and dismissed the claims of all but the first-named plaintiff without prejudice.  The court did not do so to enable Roberts, a Connecticut resident (Comp. ¶ 80) to travel to a different state – New Jersey – and try again to litigate her claims collectively.

_____

[2] A copy of the Second Amended Complaint filed in *Abraham* is attached as Kaiser Cert., Ex. 2.

Indeed, the doctrine of collateral estoppel precludes her attempt to do so. Collateral estoppel applies where: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA*, 458 F.3d 244, 249 (3d Cir. 2006), *quoting Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2009). Each of those four factors is met here. In granting the defendants' motion to sever, the *Abraham* court adjudicated the identical issue – whether diverse borrowers could bring a single lawsuit to challenge multiple mortgage transactions. The court's determination that Roberts was misjoined was necessary to the decision to dismiss her claims without prejudice. Roberts cannot contend that she were not fully represented in *Abraham*, as she is represented by the same counsel in this action. Accordingly, Roberts' claims should be dismissed on this threshold basis.

## II.    PLAINTIFFS' CLAIMS ARE MISJOINED UNDER FEDERAL RULE OF CIVIL PROCEDURE 20

Under Rule 20, Plaintiffs may only join together in an action if "they assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). Even if the requirements of Rule 20 are met – and they are clearly not met here – "district courts have the discretion to refuse joinder in the interest of avoiding

8

prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010); *see also Kalie v. Bank of Am. Corp*, No. 12 Civ. 9192 PAE, -- F.R.D. --, 2013 WL 4044951, at *6 (S.D.N.Y. Aug. 9, 2013) (holding that the court has "discretion" to sever plaintiffs based on considerations of "judicial economy" and "unfair[ ] prejudice to defendants").

Fed. R. Civ. P. 21 allows courts to "drop" misjoined parties. If all plaintiffs are misjoined, the proper remedy is for the court to dismiss "all but the first named [p]laintiff." *Abraham*, 2013 WL 2285205, at *7; *see also Aaberg v. ACandS Inc.*, 152 F.R.D. 498, 501 (D. Md. 1994) (holding that if plaintiffs' claims are misjoined, "it is entirely appropriate and just to drop all but the first named plaintiff"). The Third Circuit recognizes that to "remedy misjoinder… misjoined parties may be dropped 'on such terms as are just.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 n.5 (3d Cir. 2009). Thus, the first-named Plaintiffs, the Blondels, should remain as Plaintiffs and all other Plaintiffs should be dropped.

As noted above, in *Abraham*, the same Plaintiffs' counsel in this action attempted to bring these same claims on behalf of more than 350 plaintiffs, one of whom is again a Plaintiff in this action. The *Abraham* court soundly rejected their attempt, holding that Rule 20 prohibits plaintiffs from attempting to join claims arising out of separate mortgage transactions in one lawsuit:

1757730.1

> According to the allegations in the complaint, Plaintiffs engaged in separate loan transactions with different lenders in different offices in different states over a nine-year period. It is well established that separate loan transactions by different lenders do not constitute a single transaction or occurrence and claims by plaintiffs who engaged in those separate transactions generally cannot be joined in a single action. … Indeed, even claims by plaintiffs who engaged in separate loan transactions by the same lender cannot be joined in a single action. … Here, several hundred Plaintiffs have asserted claims against several dozen mortgage originators and servicers regarding different mortgages issued in different states over a nine year period. This Court finds Plaintiffs' separate mortgage transactions do not constitute a single transaction or occurrence under Rule 20 of the Federal Rules of Civil Procedure. . . . The Court therefore dismisses all but the first named Plaintiff . . . .

*Abraham*, 2013 WL 2285205, at *4.

Other recent decisions follow this analysis, rejecting attempts to bring such claims in a single case. *See Kalie*, 2013 WL 4044951, at *4-5 ("emphatically" holding that sixteen plaintiffs who "entered into . . . different loan transaction[s] at . . . different times . . . relat[ing] to different properties" could not join their claims in one lawsuit under Rule 20 because their "loans [did not] arise out of the 'same transaction, occurrence, or series of transactions or occurrences.'"); *Adams v. U.S. Bank, NA*, Case No. 12-cv-04640, 2013 WL 5437060, at *4 (E.D.N.Y. Sept. 27, 2013) (holding that borrowers' claims which "involve different facts, different properties located in different states, different defendants, and different analyses of underlying state law" were misjoined); *Abeel v. Bank of Am., N.A.*, Case No. 12-cv-4269 (E.D.N.Y. Nov. 9, 2012) (holding that "[p]laintiffs [were] unrelated to

10

each other" because their claims arose out of different loan transactions) (Kaiser Cert. Ex. 3, Tr. 11-12).

The *Kalie* court further held that even if the sixteen plaintiffs had satisfied Rule 20, it would still exercise its discretion to disallow joinder for reasons of judicial economy and fairness:

> Inasmuch as each plaintiff's claims appear to arise out of a mortgage-related transaction that is distinct from the transactions on which the other plaintiffs' claims are based, and as each plaintiff's claims implicate distinct loans, locations, dates and personnel, there is no meaningful economy of scale gained by trying these cases together. This case appears to involve little, if any, overlapping discovery across the plaintiffs' claims. And were plaintiffs' claims to proceed to trial, distinct witnesses and documentary proof would be required to establish (or rebut) their separate claims. The interest in economy is affirmatively disserved by forcing these many parties to attend a common trial at which these separate, unrelated claims, only a fraction of which implicates the rights of any one party, would be resolved.
>
> Moreover, given that each plaintiff's case arises out of a different loan transaction and that the Amended Complaint fails to substantiate the claim of common or patterned misconduct, a joint trial would stand to unfairly prejudice defendants. A joint trial could lead to confusion of the jury and thereby prejudice defendants. This is especially true for Seterus, against whom only one plaintiff has a claim, because there is a risk that trying plaintiffs' claims against Bank of America and Seterus in a single trial could lead to spillover prejudice.

2013 WL 4044951, at *6.

Other federal courts handling similar mortgage mass actions have reached the same conclusion as that reached in *Abraham, Abeel, Adams* and *Kalie. See, e.g., Barber v. America's Wholesale Lender*, 289 F.R.D. 364, 367 (M.D. Fla. 2013)

11

("Plaintiffs' claims involve conduct by different Defendants, different loan documents, different dates, and different operative factual scenarios.  In addition, the resolution of each claim would require individualized attention and likely require separate trials.  In short, Plaintiffs' claims do not arise out of the 'same series of transactions or occurrences' even under a broadest interpretation of the phrase."); *Richards v. Deutsche Bank Nat'l Trust Co.*, CV 12-4786 DSF (RZx), 2012 U.S. Dist. LEXIS 115302, at *2 (C.D. Cal. Aug. 15, 2012) ("Plaintiffs' wholly unsupported and speculative allegation that the various Defendants conspired to defraud each individual Plaintiff does not satisfy the requirement that Plaintiffs' claims arise out of the same transaction… , nor does it obviate the need for separate proof as to each individual claim.").

The 98 Plaintiffs in this action are likewise misjoined.  They entered into different loan transactions at different times with different lenders for different properties in different states.  (Comp. ¶¶ 6-99.)  Further, as explained in *Kalie*, considerations of judicial economy and fairness also mandate that misjoined Plaintiffs be dropped.

## III.   <u>PLAINTIFFS FAIL TO STATE ANY CLAIMS FOR RELIEF</u>

### A.   <u>Standard For Motion To Dismiss</u>

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court determines whether the plaintiff has "fail[ed] to state a claim upon which

12

relief can be granted."  In doing so, the Court "must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff."  *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 701 (D.N.J. 2011), *citing Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  However, "[a] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss."  *Id*. at 702, *citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).

The Court must also ensure that the pleading requirements of Fed. R. Civ. P. 8(a)(2) are satisfied.  *See Twombly*, 550 U.S. at 555-56; *Sbeih v. Township of E. Brunswick*, No. 3:12–CV–05893–PGS–TJB, 2013 WL 1224463, at *2 (D.N.J. Mar. 25, 2013) ("a Complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability").  Although Rule 8(a)(2) does not require detailed factual allegations, it requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  "'[N]aked assertion[s] devoid of 'further factual enhancement'" will not do.  *Iqbal*, 556 U.S. at 678 (second alteration in the original) (*quoting Twombly*, 550 U.S. at 557).

Rule 8(a)(2) also requires a complaint to be "plausible on its face."  *Twombly*, 550 U.S. at 570.  Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible."  *Id*.  "Determining whether a

13

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B.    The Complaint Does Not Comply With Rule 8(a)(2) And The Pleading Requirements Set Forth In *Twombly* And *Iqbal***

The Complaint violates Rule 8(a)(2) and the applicable pleading standards. It is characterized by sweeping generalizations unsupported by specific facts. For instance, Plaintiffs make the broad and vague assertion, without alleging any supporting facts, that Defendants "ratified and approved" of the actions taken by each other (Comp. ¶ 192) and participated in a joint enterprise or civil conspiracy together. Complaints alleging nothing more "than vague allegations of conspiracy" do not comply with Rule 8(a)(2). *Brookhart v. Rohr*, 385 Fed. App'x 67, 69 (3d Cir. 2010). *See also Adams v. Teamsters Local 115*, 214 Fed. App'x 167, 175 (3d Cir. 2007).

Moreover, Plaintiffs' conclusory allegation that Defendants ratified and approved each other's conduct is implausible, and the Court can "draw on its judicial experience and common sense" for that conclusion. *Iqbal*, 556 U.S. at 679. Defendants would not ratify and approve of each other's conduct – many of them are public companies, in a regulated industry, with separate and independent boards, and most are competitors. "[A]llegations of conspiracy that ignore commercial reality must be dismissed." *Reading Int'l, Inc. v. Oaktree Capital*

14

*Mgmt. LLC*, 317 F. Supp. 2d 301, 322 (S.D.N.Y. 2003).

Plaintiffs also fail to link any of the alleged wrongdoing to any Defendant. Instead, Plaintiffs' allegations of wrongful loan origination and servicing are leveled at all Defendants without any specific factual allegations and without any regard for the fact that certain Defendants (such as holding company defendants) do not originate or service loans or control entities that originate or service loans. This type of non-specific, scattershot pleading falls entirely short of the fair notice requirement mandated by Rule 8(a)(2). *See, e.g., Pitman v. Ottenberg*, No. 10-2538, 2011 WL 6935274, at *13-14 (D.N.J. Dec. 30, 2011) (dismissing a claim where plaintiff merely "lumped" together multiple defendants and "makes only conclusory allegations which fail to support any of the substantive claims brought against [defendants]").

Finally, although Plaintiffs allege generally that Defendants originated loans based on inflated appraisals and lax underwriting standards, somehow wrongfully used the MERS® System, failed to work with borrowers on loan modifications, and filed false documents involving mortgage ownership, Plaintiffs allege no facts to support these generalized theories and sweeping conclusions. Plaintiffs' "naked assertion[s] devoid of 'further factual enhancement'" are not enough to survive this motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in the original) (internal quotations and citation omitted).

15

1757730.1

### C.    Plaintiffs' TCCWNA Claim Fails As A Matter Of Law

Plaintiffs' first claim, for violation of the TCCWNA fails as a matter of law because Plaintiffs simply allege that Defendants are liable "for offering contracts for home loans and/or loan servicing in violation of Plaintiffs' rights under the law." (Comp. ¶ 215.)  In order to state a claim under the statute, Plaintiffs are required to identify the precise contractual provisions that violated the law, and they have failed to do so.  Accordingly, the claim should be dismissed.  *See, e.g., Rivera v. Wash. Mut. Bank*, 637 F. Supp. 2d 256, 268 (D.N.J. 2009) (dismissing claim where plaintiffs failed to plead which provisions of a mortgage violate a "clearly established right"); *Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (same).

Moreover, to the extent Plaintiffs' claims concern "a purchase mortgage," such a mortgage agreement and "efforts to collect on that mortgage agreement, both fall outside the protections of" the TCCWNA.  *See Allen v. LaSalle Bank, N.A.*, No. Civ. 08-2240, 2012 WL 1898612, at *4 (D.N.J. May 23, 2012); *see also* N.J.S.A. § 56:12-15 ("The provisions of [the TCCWNA] shall not apply to … the sale of real estate").

Further, 84 of the 98 Plaintiffs in this action do not allege any connection to New Jersey and thus, cannot state a claim for violation of the TCCWNA.  *See Crete v. Resort Condos. Int'l, LLC*, Civ.A. No. 09-5665, 2011 WL 666039, at *5

16

(D.N.J. Feb. 14, 2011) (dismissing N.J. Consumer Fraud Act claim where "facts of this case do not involve New Jersey").

### D.   Plaintiffs' Misrepresentation Claims Fail As A Matter Of Law

Plaintiffs' fraud-based claims for intentional misrepresentation and negligent misrepresentation fail for several independent reasons.  First, Plaintiffs fail to allege these claims with the specificity mandated by Rule 9(b).  Second, Plaintiffs can allege neither "but for" nor proximate causation.  Third, Plaintiffs' negligent misrepresentation claim fails because Plaintiffs and Defendants had no special relationship to permit a negligent misrepresentation claim.

### 1.   Plaintiffs' Fraud Claims Do Not Satisfy Rule 9(b)

Rule 9(b) states that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  As such, both intentional and negligent misrepresentation claims must be alleged with specificity.  *See In re: Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (Rule 9(b) applies to claims that "sound in fraud"); *Gray v. Bayer Corp.*, No Civ. A. 08-4716 (JLL), 2009 WL 1617930, at *2-3 (D.N.J. June 9, 2009) (applying Rule 9(b) to intentional and negligent misrepresentation claims); *Hemy v. Perdue Farms, Inc.*, No. Civ. A. 11-888, 2011 WL 6002463 (D.N.J. Nov. 30, 2011) (applying Rule 9(b) to negligent misrepresentation).

To satisfy Rule 9(b), a plaintiff "must allege the 'who, what, when, where,

17

and how' of the claim." *Mason*, 774 F. Supp. at 702.  Rule 9(b)'s purpose "is to provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior." *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 2000).  "[C]ollectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)." *Weske v. Samsung Elecs. Am. Inc.*, No. Civ. 2:10-4811 (WJM), 2013 WL 1163501, at *3 (D.N.J. Aug. 23, 2003); *see also Hale v. Stryker Orthopedics*, No. Civ. 8-337 (WJM), 2009 WL 321579, at *6 (D.N.J. Feb. 9, 2009).  Rather, where multiple defendants are involved, the "complaint must plead with particularity … the [specific] allegations of fraud applicable to each defendant." *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-cv-4038, 2012 WL 869007, at *2 (D.N.J. Mar. 14, 2012); *see also MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).  Further, each "individually named plaintiff must satisfy Rule 9(b) independently." *Mason*, 774 F. Supp. 2d at 702 (discussing standard in connection with class action cases).

Plaintiffs' fraud related allegations do not meet the heightened pleading requirements of Rule 9(b) for multiple reasons.  First, Plaintiffs allege their misrepresentation claims against all Defendants collectively without linking any

18

act of concealment or misrepresentation to any particular Defendant. (Comp. ¶¶ 217-227.) Second, Plaintiffs do not specifically plead a single alleged omission or misrepresentation. Instead, they generally allege that Defendants concealed and misrepresented facts about their use of inflated appraisals, their violation of internal underwriting standards, and their intent to disregard local recording statutes. (Comp. ¶¶ 141, 169, 171-172, 186-187.) *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, No. Civ. 09-4146 (DMC), 2010 WL 2925913 (D.N.J. Jul. 21, 2010) (dismissing vague allegations of misrepresentations that failed to specify the content of the statements, their effect on plaintiff, and the time and place of the misrepresentation as insufficiently pleaded).

In considering the same allegations, the *Abraham* court concluded that the plaintiffs' allegations were "wholly unsupported and speculative" and failed to satisfy Rule 9(b) because the allegations did not "indicate[] when or where such statement or omissions occurred, or which employees of which Defendants were responsible for such statements or omissions." *Abraham*, 2013 WL 2285205, at *6. *Abraham* held that the first-named plaintiff's failure to identify "a single fraudulent statement to her" merited the dismissal of her fraud, intentional and negligent misrepresentation and unjust enrichment claims. *Abraham*, 2013 WL 2285205, at *9. The same should hold true in this action.

19

## 2.   Plaintiffs' Fraud Claims Do Not Allege Causation

Proximate causation is an essential element of claims for intentional and negligent misrepresentation.  *See, e.g.*, *McCabe v. Ernst & Young, LLP,* No. Civ. 01-5747, 2006 WL 42371, at \*12 (D.N.J. Jan. 6, 2006) ("numerous other federal courts have …uniformly dismissed common law claims for fraud and negligent misrepresentation for failure to plead or prove proximate causation"), *aff'd*, 494 F.3d 418 (3d Cir. 2007).

For proximate cause to exist, Plaintiffs must first establish "but for" causation, also known as "causation-in-fact."  *See, e.g.*, *Kulas v. Pub. Serv. Elec. & Gas Co.*, 41 N.J. 311, 317 (1964); *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996).  "But-for causation is a hypothetical construct.  In determining whether a particular factor [is] a but-for cause of a given event, [one] begin[s] by assuming that that factor was present at the time of the event, and then ask[s] whether, even if that factor had been absent, the event nevertheless would have transpired in the same way."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989), *superseded in part on other grounds by statute*, 42 U.S.C. § 1981a.

If Plaintiffs are able to allege the threshold requirement of "but for" causation, the analysis then turns to proximate causation.  Proximate cause is the generic label for "the judicial tools used to limit a person's responsibility for the consequences of that person's own acts."  *Holmes v. Sec. Investor Prot. Corp.*, 503

U.S. 258, 268 (1992).  The construct of "proximate causation" is needed "as a legal tool for limiting a wrongdoer's liability only to those harms that have a reasonable connection to his actions." *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999).

Thus, the "central element" of proximate cause is "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268-69.  There are three main reasons for the directness requirement.  "First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." *Id.* at 269.  "Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." *Id.*  "And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." *Id.* at 269-70.

Here, Plaintiffs claim that "as a proximate result" of Defendants' alleged misrepresentations, they experienced a "loss of equity in their houses."  (Comp. ¶¶

21

223, 227.)  Plaintiffs also claim that Defendants' alleged misrepresentations caused

them damages in the form of expenditures to "protect[ ] themselves," lower credit

scores, and the inability to obtain credit.  (*Id*.)  Neither of these claims is sufficient.

### a.     The Diminution of Home Values

### (1)     "But For" Causation Is Lacking

Plaintiffs' allegation that but for Defendants' lending activities, their

properties would not have declined in value, fails as a matter of law.  It is well-

known that the national housing market dramatically declined in 2007, *see Senior

Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA,

Inc.)*, 680 F.3d 1298, 1306 (11th Cir. 2012), and "the broad decline in the housing

market . . . was the product of a myriad of factors occurring in unknown and

unknowable proportions."  *City of Cleveland v Ameriquest Mortg. Secs.*, *Inc.*, 621

F. Supp. 2d 513, 535 (N.D. Ohio 2009), *aff'd*, 615 F.3d 496 (6th Cir. 2010).

Almost all homeowners in the country – including those who never transacted

business with Defendants – experienced a decline in home values.  Most, if not all,

Plaintiffs would have experienced declines in their home values whether they

obtained loans from Defendants—and whether they obtained a loan at all.

Indeed, Plaintiffs' causation theory has been rejected by courts.  *See Bank of

Am. Corp. v. Superior Court*, 198 Cal. App. 4th 862, 873 (Cal. Ct. App. 2011)

(holding that because "all [homeowners] suffered a loss of home equity due to the

generalized decline in home values," there was no causal "nexus" between the lender's alleged fraud and plaintiffs' alleged loss in home equity).  *See also Larobina v. Wells Fargo Bank, N.A.*, No. 3:10cv1279 (MRK), 2012 WL 1032953, at *3 (D. Conn. Mar. 27, 2012) (dismissing fraud claim for lack of causation because of "the sheer breadth of the possible intervening independent third-party actions" stemming from the "financial crisis"); *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 592-594 (E.D. Pa. 2009) (dismissing fraud claims for lack of loss causation where losses were "not the result of 'fraud' but stem from the unexpected collapse of the real estate and mortgage markets").

### (2)  <u>Proximate Causation</u>

Although Plaintiffs' failure to allege "but for" causation ends the inquiry, even assuming that Defendants' alleged concealment and misrepresentations were adequately pleaded and had some causal link to the national housing market's decline, proximate causation is also lacking.  The case of *City of Cleveland v. Ameriquest Mortg. Secs., Inc.*, 615 F.3d 496 (6th Cir. 2010) – which arose in the context of the sub-prime mortgage crisis – is instructive.

In *City of Cleveland*, the city alleged that the foreclosures resulting from the securitization practices of two dozen financial institutions caused damage to the city by lowering its tax revenues and requiring it to expend money "for fire and police protection and maintenance and demolition costs" relating to foreclosed

1757730.1

homes.  615 F.3d at 499.  The court dismissed the claims at the pleadings stage for lack of proximate cause under the *Holmes* factors (set forth, *supra* Point III.D.2.)

The Sixth Circuit affirmed, holding that the first *Holmes* factor weighed against a finding of proximate causation because multiple intervening factors existed: "the injuries that Cleveland allege[d] could have been caused by many other factors unconnected to the Defendants' conduct," including "home buyers [who] chose to enter into a sub prime mortgage and . . . default on their loans" and "other companies not listed in the complaint [that] financed sub prime loans."  *Id.* at 504-505.  The Sixth Circuit pointed out the insuperable challenge of determining what "complex" factors caused municipal expenditures to increase while tax revenues decreased.  *Id.* at 505-506.

Proximate causation is lacking here for many of the same reasons.  The first *Holmes* factor militates against finding proximate cause because, as the district court pointed out in *City of Cleveland*, "the broad decline in the housing market . . . was the product of a myriad of factors occurring in unknown and unknowable proportions."  621 F. Supp. 2d at 535.  Plaintiffs simply cannot assign liability to Defendants for the nationwide diminution of home values amidst numerous intertwined factors.  The conclusory allegation that Defendants' "scale of [] lending . . . [led] to widespread declines in property values," (Comp. ¶ 187) fails to identify the cause of the decline among the tangle of intervening causes.

24

1757730.1

### (3)     The Tack-On Damages

Plaintiffs also claim that Defendants' conduct caused disparate and unrelated harms, including "expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, inability to refinance their mortgages, as well as fees and costs, including, without limitation, attorneys' fees and costs."  (Comp. ¶¶ 223, 227.)

If Plaintiffs claim these damages were caused by the 2007 decline of the housing market, they cannot establish causation.  As described above, the type of economic harm resulting from the housing market decline was generalized; it affected the country as a whole, and its myriad of reasons and factors have no direct nexus to Defendants.  *See supra*, Point III.D.2.a.  Further, if Plaintiffs contend they expended money to "protect themselves" against foreclosures and experienced credit-related damages, such harm would have been caused by their individual mortgage defaults, not general economic decline.

### 3.     The Negligent Misrepresentation Claim Fails For Lack of A Special Relationship Between Defendants and Plaintiffs

To sustain a negligent misrepresentation claim, a plaintiff must allege that the defendant had a duty, as a result of a special relationship, to give correct information.  *GlassHouse Sys., Inc. v. Int'l Bus. Machs. Corp.*, 607 F. Supp. 2d 709, 716 (E.D. Pa. 2009).  New Jersey law is well settled that "a lender-borrower

25

arrangement is not ordinarily a special relationship" giving rise to any duty. *Patetta v. Wells Fargo Bank, NA*, No. CIV. 3:09-2848 (FLW), 2009 WL 2905450, at *8 (D.N.J. Sept. 10, 2009). *See also United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (App. Div. 1997) ("virtually unanimous rule is that creditor-debtor relationships rarely give rise to a fiduciary duty"). Nor is there a special relationship between a borrower and a loan servicer. *See, e.g., Bailey v. Deutsche Bank Trust Co.*, Civil Action No. DKC 13–0144, 2013 WL 2903498, at *5-7 (D. Md. Jun. 12, 2013) (servicers did not owe special duty to borrowers related to loan modifications to support negligent misrepresentation claim). Because the Complaint does not allege any special relationship, this claim fails as a matter of law.

## E.   Plaintiffs' Negligence Claim Fails As A Matter Of Law

Under New Jersey law, a duty of care is necessary to sustain a negligence claim. *See Ivins v. Town Tavern*, 335 N.J. Super. 188, 194, 762 A.2d 232, 235 (App. Div. 2000). However, an arm's length business transaction cannot give rise to a duty of care. *See Roll v. Singh*, No. 07-CV-04136FLW, 2008 WL 3413863, at *21-22 (D.N.J. June 26, 2008). Courts have consistently rejected the notion that a lender owes a duty of care to a prospective borrower. *Galayda v. Wachovia Mortg., FSB*, No. CIV. A. 10-1065 FLW, 2010 WL 5392743, at *13 (D.N.J. Dec. 22, 2010); *see also Patetta*, 2009 WL 2905450, at *8.

In *Abraham*, the court held that the named plaintiff's contract-based

negligence theory (repeated here in Comp. ¶ 229) "fails as a matter of law because it explicitly arises from her mortgage agreement." *Abraham*, 2013 WL 2285205, at *11. *Abraham* also held that "to the extent" plaintiffs allege that "Defendants breached some duty other than those contained in any contract…, such a claim would also fail" because "a lender does not owe a borrower any special duties." *Id*. Here too, because Defendants do not owe Plaintiffs a duty of care, Plaintiffs' negligence claim necessarily fails as a matter of law.

### F.   Plaintiffs' Slander Of Title Claim Fails As A Matter Of Law

To state a claim for slander of title under New Jersey law, a plaintiff must allege (1) a communication falsely casting doubt on the validity of his title, (2) reasonably calculated to cause harm, and (3) resulting in special damages. *See Lone v. Brown*, 199 N.J. Super. 420, 426, 489 A.2d 1192, 1195 (App. Div. 1985). In order to establish a cause of action for slander, the plaintiff must show that the communication was made with malicious intent, whether express or implied. *Id*. Further, "[i]n order that a statement may be disparaging to another's property in land or other things," it must "cast[] doubts upon the extent of the other's ownership." *Frega v. N. N.J. Mortg. Ass'n*, 51 N.J. Super. 331, 338, 143 A.2d 885, 889 (App. Div. 1958) (*citing* Restatement of Torts, § 629, Comment (d), p. 340); *see also Peters Well Drilling Co. v. Hanzula*, 242 N.J. Super. 16, 27, 575 A.2d 1375, 1381 (App. Div. 1990).

27

Plaintiffs maintain that Defendants "filed papers with various courts claiming to be the holder of a mortgage and/or Note for the Plaintiffs' property (or some of them) when Defendants (or some of them) were not in possession of either the mortgage or the Note." (Comp. ¶ 234.)  Their allegations merely parrot the elements of the cause of action.  (Comp. ¶¶ 235-236.)  Plaintiffs do not allege any slanderous statements other than those allegedly made in court filings.  Plaintiffs do not identify the content of any purported statement, which Defendant allegedly made the statement, or when it was made.

These allegations fail to state a claim for slander of title because in the context of a legal proceeding, statements by parties and their attorneys are absolutely privileged if they have "some connection or logical relation to the action." *Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*, 415 Fed. App'x 432, 433 (3d Cir. 2011), *quoting Hawkins v. Harris*, 141 N.J. 207, 216 (1995). Further, simply reciting the elements of the claim does not pass muster under Rule 8(a)(2), *Twombly*, and *Iqbal*.  Moreover, Plaintiffs fail to allege malice or recklessness and also fail to set forth how or why Defendants' alleged lawful filings in various courts cast doubt upon the title of their homes.  *Frega*, 51 N.J. Super. at 338, 143 A.2d at 889.  Plaintiffs have also failed to plead special damages with particularity, as required by Fed. R. Civ. P. 9(g).  *See, e.g., Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 428 (D.N.J. 2005) (dismissing trade

28

libel counterclaim for failure to plead special damages with particularity).

In addition to these pleading failures, this claim is also negated by the fact that Plaintiffs admit to obtaining mortgages on their properties.  Even assuming certain Defendants were not in possession of the mortgage and the note, Plaintiffs' allegations provide no explanation as to how such filings could adversely affect title to Plaintiffs' homes.

In *Abraham*, the court rejected the identical, collectively pleaded slander of title claim, noting that the "complaint does not allege that any Defendant filed any papers in court with respect to" the first-named plaintiff's "property," and holding that "because there is no allegation of a false communication with respect to" her, the claim was properly dismissed.  *Abraham*, 2013 WL 2285025, at *12.

### G.   Plaintiffs' Ejectment Claim Fails As A Matter Of Law

Although the Complaint does not make clear the basis for Plaintiffs' ejectment claim, Plaintiffs presumably seek to undo foreclosure proceedings and evictions.[3]  In the two paragraphs comprising the claim, Plaintiffs contend that they have been improperly "dispossessed of their property, in whole or in part, physically, or by wrongful, invalid, improper, and/or illegal claims made, including claims made in the absence of proper documentation or legal records" and that they

---

[3] To the extent that state court judgments of foreclosure and eviction exist, this relief would be barred by the *Rooker-Feldman* doctrine and/or principles of *res judicata* and collateral estoppel.

are "damaged" as a result. (Comp. ¶¶ 238-239.) Once again, mere descriptions of allegedly actionable conduct without factual detail or any attempt to identify which Defendant engaged in what conduct with respect to which Plaintiff does not suffice to state a claim. *Iqbal*, 556 U.S. at 663. The *Abraham* court dismissed the claim based on the identical allegations, holding that the lack of an allegation that the first-named plaintiff "was dispossessed of her property" was fatal to the claim. *Abraham*, 2013 WL 228520, at *12.

### H.   Plaintiffs' Breach Of Contract/ Constructive Fraud Claim Fails As A Matter Of Law

Plaintiffs attempt to allege two distinct claims of breach of contract and constructive fraud under a single count. Both fail.

### 1.   Breach of Contract

The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance of the contract by the plaintiff, (3) defective performance by the defendant, and (3) damages. *See, e.g.*, *Cargill Home Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 579 (D.N.J. 2010); *Smith v. Trusted Universal Standards In Elec. Transactions, Inc.*, CIV09-4567RBKKMW, 2010 WL 1799456, at *5 (D.N.J. May 4, 2010). Plaintiffs must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue. *See, e.g.*, *Arbitron Inc. v. Longport Media LLC*, No. CIV.A. 12-2444, 2013 WL 1163492, at *4 (D.N.J.

30

Mar. 19, 2013); *Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, No. CIV.A. 09-3125

FLW, 2011 WL 4916337, at *1 (D.N.J. Oct. 17, 2011).

Plaintiffs claim that Defendants breached their contracts with Plaintiffs by

failing to comply with local recording statutes and using inflated appraisals.

(Comp. ¶ 241.)  As a preliminary matter, these allegations cannot state a breach of

contract claim because Plaintiffs do not allege the provisions of the contracts that

Defendants allegedly breached.  For this reason, the breach of contract claim was

dismissed in *Abraham*: "Having failed to adequately plead the terms of any

contract or contracts, Ms. Abraham's breach of contract claim fails as a matter of

law." *Abraham*, 2013 WL 2285205, at *10.

Moreover, certain Plaintiffs claim that they entered into a mortgage

transaction with a Defendant "and/or its subsidiaries or affiliates."  (*See, e.g.,*

Comp. ¶¶ 17, 45, 69, 73.)  At a minimum, only Plaintiffs who entered into

contracts with Defendants (as opposed to their subsidiaries or affiliates) can

maintain breach of contract claims against Defendants.  Further, Plaintiffs have not

pleaded that they fully performed under the purported contracts.

Plaintiffs also claim that Defendants are also liable for breach of certain

unspecified agreements between Defendants and the United States Government

because "Defendants' acceptance of TARP money created an obligation to modify

loans outstanding on Plaintiffs' real estate" but Defendants "failed" to modify

31

Plaintiffs' loans.  (Comp. ¶¶ 243-245.)  Unlike in *Abraham*, where Plaintiffs alleged that they were "third party beneficiar[ies]" of those agreements – an assertion rejected in *Abraham*, 2013 WL 2285205, at *10 – Plaintiffs here do not even allege that they are intended third-party beneficiaries of Defendants' purported agreements with the government.  As in *Abraham*, Plaintiffs' allegations here lack specificity and fail even to identify the agreements the Defendants purportedly breached.  Even assuming that this claim mirrors recent borrower assertions that their servicers violated the Servicer Participation Agreements ("SPAs") with Fannie Mae under the Home Affordable Modification Program ("HAMP"), the claims fail as a matter of law.  *See Griffith-Fenton v. Chase Home Fin.*, 11 CV 4877 (VB), 2012 U.S. Dist. LEXIS 99450, at *7-*8 (S.D.N.Y. May 28, 2012) (describing the SPAs), *aff'd*, No. Civ. 12-3357, 2013 U.S. App. LEXIS 17556 (2d Cir. Aug. 22, 2013).

   "HAMP does not provide a private right of action."  *Sinclair v. Citi Mortgage, Inc.*, 519 Fed. Appx. 737, 739 (3d Cir. 2013).  Moreover, the vast majority of courts, including this Court, have rejected third-party breach of contract claims arising out of HAMP and SPAs.  *See Thomas v. U.S. Bank Nat'l Ass'n*, 474 B.R. 450, 456 (D.N.J. 2012) ("numerous courts have held that the HAMP Guidelines do not create a private right of action, and that there is no viable third-party beneficiary theory under which [plaintiffs] could proceed"); *see also*

32

*Rivera v. Bank of Am. Home Loans*, No. 09 CV 2450 (LB), 2011 WL 1533474, at *5-6 (E.D.N.Y. Apr. 21, 2011) (collecting cases that have "rejected borrowers' claims to enforce [SPAs] as third-party beneficiaries").

Further, Plaintiffs' claim fails because, as in *Abraham*, they have not "provided the terms of any agreement between TARP and any Defendant" that gives rise to the purported duty they allege was breached.  *Abraham*, 2013 WL 2285205, at *10.

### 2.    <u>Constructive Fraud</u>

"The elements of constructive fraud are the same as those for actual fraud, except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties."  *Chazanow v. Sussex Bank*, No. CIV.A. 11-1094 CCC, 2012 WL 870327, at *3 (D.N.J. Mar. 13, 2012).  A constructive fraud claim will not lie in "arm's-length business negotiation[s]."  *E*Trade Fin. Corp. v. Deutsche Bank AG*, 631 F. Supp. 2d 313, 388 (S.D.N.Y. 2009), *aff'd*, 374 Fed. App'x 119 (2d Cir. 2010).  Plaintiffs' constructive fraud claim fails because, as discussed above, any relationship between any one Defendant and any particular Plaintiff is an arm's length commercial transaction that is not fiduciary in nature. *See supra* Point III.D.3.

Moreover, Plaintiffs' single allegation that "the acts and/or omissions of the Defendants, jointly and severally, wherein Defendants intentionally concealed

33

material fact(s) to defraud or mislead the Plaintiffs, upon which the Plaintiffs

reasonably relied, damaged the Plaintiffs in violation of N.J.S.A. § 58:8-2,"

(Comp. ¶ 242), is not pled with the particularity required by Rule 9(b), as set forth

above.  *See Abraham*, 2013 WL 2285205, at *9 (dismissing constructive fraud

claim for failure to satisfy Rule 9(b)).  Further, Plaintiffs' bare reference to the

New Jersey consumer fraud statute falls far short of stating a claim thereunder.  To

state a claim under that statute, a plaintiff must demonstrate: "(1) an unlawful

practice by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal

connection between the defendant's unlawful conduct and the plaintiff's

ascertainable loss."  *Ciccone v. World Sav. Bank, F.S.B.*, No. 3:12-CV-01661-

PGS-TJB, 2013 WL 2146912, at *10 (D.N.J. May 15, 2013) (granting motion to

dismiss).  Rule 9(b) applies to claims under the New Jersey statute.  *See, e.g.,*

*Naporano*, 79 F. Supp. 2d at 511.  As discussed above in connection with

Plaintiffs' other fraud claims, Plaintiffs fail to meet this standard and for the same

reasons, this claim should be dismissed.  *See, e.g., Tutanji v. Bank of Am.*, No.

Civ.A. 12-887 (JLL), 2012 WL 1964507, at *6 (D.N.J. May 31, 2012) (granting

motion to dismiss where plaintiff failed to allege "out-of-pocket loss" and noting

that mortgage servicer could not be liable for alleged wrongdoing in origination).

## I.   <u>Plaintiffs' Civil Conspiracy Claim Fails As A Matter Of Law</u>

Plaintiffs' claim for civil conspiracy is deficient as a matter of law because

New Jersey does not recognize an independent cause of action for civil conspiracy. "A conspiracy cannot be made the subject of a civil action unless something has been done which, absent the conspiracy, would give a right of action." *Tare v. Bank of Am.*, No. Civ.A. 07-583 (JLL), 2009 WL 799236, at *9 (D.N.J. Mar. 24, 2009), *quoting Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n*, 37 N.J. 507 (1962). Moreover, Plaintiffs have not stated a claim for concerted action liability, which requires showing that Defendants "in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or lend aid or encouragement to the wrongdoers, or ratify and adopt the wrongdoer's acts done for their benefit." *Shackil v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 116 N.J. 155, 163 (1989) (citation and internal quotation marks omitted). Thus, Plaintiffs' eighth claim should be dismissed because they have failed to state a claim for any independent underlying tort. *See Abraham*, 2013 WL 2285205, at *12 (dismissing civil conspiracy claim because "the Court has dismissed all of Ms. Abraham's substantive claims"); *see also Mu Sigma, Inc. v. Affine, Inc.*, No. Civ.A. 12-1323 FLW, 2013 WL 3772724, at *6 (D.N.J. July 17, 2013).

Further, Plaintiffs do not allege facts to support their "member liability in joint enterprise claim," but instead simply recite the elements. Merely relying upon the legal descriptions of claims without any factual support is not enough to

state a claim under Rule 8(a)(2), *Twombly*, and *Iqbal*.  *See, e.g., U.S. ex rel.*

*Lampkin v. Johnson & Johnson, Inc*., No. Civ.A. 08-05362 JAP, 2013 WL

2404238, at *6 (D.N.J. May 31, 2013) ("vague and conclusory allegations are

insufficient to plead a claim for conspiracy").

   To the extent that Plaintiffs attempt to assert that Defendants engaged in

concerted wrongful actions through use of the MERS® System, this theory also

fails to state a claim.  Courts across the country have approved the use of the

MERS® System.  As an example, the court presiding over the multidistrict

litigation concerning the MERS® System rejected the premise that lenders

somehow conspired through the use of the MERS® System, holding that "[t]he

MERS® System is not fraudulent."  *In re Mortg. Elec. Registration Sys. Litig.*, 744

F. Supp. 2d 1018, 1029 (D. Ariz. 2010) (rejecting claims that lenders conspired to

commit fraud through the use of the MERS® System).  The theory that lenders

conspired to harm borrowers, like Plaintiffs, through use of the MERS® System

fails because the MERS® System "has no effect on their status as borrowers" and

"does not alter Plaintiffs' obligations under the mortgages."  *Cervantes v.*

*Countrywide Home Loans, Inc.*, No. CV 09-517-PHX-JAT (Lead), 2009 U.S. Dist.

LEXIS 87997, at *31-*32 (D. Ariz. Sept. 24, 2009), *aff'd*, 656 F.3d 1034 (9th Cir.

2011).

   Finally, Plaintiffs cannot proceed on the theory that Defendants are

36

"stakeholders" in MERSCORP Holdings, Inc. ("MERSCORP"), which is the

parent corporation of MERS. (Comp. ¶ 122.)  To impose such liability, this Court

would have to first pierce the corporate veil between MERS and MERSCORP, and

then the veil between MERSCORP and Defendants.  A federal court in Delaware

has already refused to pierce the corporate veil between MERS, MERSCORP and

the shareholders of MERSCORP, holding that the plaintiffs had not "adequately

pled facts sufficient to support an inference that the Shareholder Defendants are

using an independent corporation to defeat the ends of justice, to perpetuate fraud,

to accomplish a crime, or otherwise evade the law." *Trevino v. Merscorp, Inc.*,

583 F. Supp. 2d 521, 529 (D. Del. 2008).  Plaintiffs' Complaint is similarly devoid

of factual allegations evidencing fraud, or an attempt to evade the law such that the

integrity of the corporate structure is undermined and should be pierced.

### J.     **Plaintiffs' Unjust Enrichment Claim Fails As A Matter of Law**

In disregard of *Twombly* and *Iqbal*, Plaintiffs allege that Defendants have

been "unduly benefited by improperly collecting fees and charges from Plaintiffs

and avoiding mortgage recordation fees."  (Comp. ¶ 253.)  This claim, which lacks

any "factual enhancement," is insufficient as a matter of law.  *Iqbal*, 556 U.S. at

678 (internal quotations and citation omitted).  Moreover, as Plaintiffs' unjust

enrichment claim is premised upon allegations of "concealment" and "willful

misrepresentation" (Comp. ¶ 254), the claim is subject to the requirements of Rule

9(b).  *See, e.g., Crete*, 2011 WL 666039, at *5 ("District of New Jersey has

required a party setting forth an unjust enrichment claim to state the fraudulent acts

underlying the unjust enrichment claim with the 'particularity' required by Rule

9(b)"); *Abraham*, 2013 WL 2285205, at *9 (dismissing unjust enrichment claim for

failure to satisfy Rule 9(b)).  Plaintiffs have not met this requirement.

Further, to the extent that Plaintiffs allege that Defendants have been

unjustly enriched by collecting mortgage payments, the claim is not legally

cognizable.  If a contract, like a mortgage, governs a particular subject, a quasi-

contract is precluded.  *See Dovale v. Marketsource, Inc.*, No. Civ.A. 05-2872

(FLW), 2006 WL 2385099, at *8 (D.N.J. Aug. 17, 2006) ("The doctrine of unjust

enrichment is recognized only in the absence of an agreement between the

parties.") (internal quotation marks omitted).  Defendants are not unjustly enriched

by obtaining repayment of their loans.

## IV.   <u>PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO REPLEAD</u>

Defendants respectfully request that Plaintiffs be denied leave to replead.  In

this action, Plaintiffs' counsel filed a virtually identical Complaint to the one that

was summarily dismissed in *Abraham* (a complaint in *Abraham* that had been

amended twice).  *Abraham* denied plaintiffs' request to amend, holding plaintiffs'

"proposed amendments" would be "futile."  *Abraham*, 2013 WL 2285205, at *13.

However, if the Court decides that Plaintiffs may have another chance to re-

plead, Defendants respectfully request that Plaintiffs specifically plead the timeliness of their claims.  The face of the Complaint reveals that some claims are time-barred.  The Complaint targets loan origination.  Plaintiffs claim that their loans were originated at unspecified times during a nine-year period from 2001 to 2009.  (Comp. ¶ 2(a).)  Because this lawsuit was filed on June 11, 2013, at least some Plaintiffs' claims are barred by the six-year statute of limitations (intentional misrepresentation, negligent misrepresentation, and breach of contract) and two-year statute of limitations (negligence) that are applicable to this case.  *See* N.J.S.A. § 2A:14-1 (six year limitations period for breach of contract and fraud-based claims); N.J. Stat. § 2A:14-2(a) (two year statute of limitations for negligence).  Given that they have raised the specter of untimely claims, Plaintiffs should identify the date of their loans before proceeding any further.

1757730.1

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court dismiss the Blondels' claims with prejudice for failure to state a claim as a matter of law, and drop the remaining plaintiffs as misjoined.  Alternatively, if the Court determines not to drop the remaining plaintiffs as misjoined, their claims should be dismissed for failure to state a claim as well.

Dated:  October 10, 2013

BRYAN CAVE LLP

By: /s/ Scott H. Kaiser
      Scott H. Kaiser
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
scott.kaiser@bryancave.com

*Attorneys for Bank of America, N.A. and Countrywide Home Loans, Inc.*

REED SMITH LLP

By:  /s/ Mark S. Melodia
      Mark Melodia
      Diane Bettino
136 Main Street, Suite 250
Princeton Forrestal Village
Princeton, NJ 08540
Main: 609-987-0050
Fax: 609-951-0824
MMelodia@reedsmith.com
DBettino@reedsmith.com

*Attorneys for Bank of America, N.A. and Countrywide Home Loans, Inc.*

40

1757730.1